## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------
In re:                                    )    Chapter 11
                                          )
MILFORD CONNECTICUT                       )
    ASSOCIATES, L.P.,                    )    Case No. 04-30511 (ASD)
                                          )
    Debtor.                               )    Re: Doc. I.D. Nos. 98, 101, 129
---------------------------------------------------

### MEMORANDUM OF DECISION ON CONFIRMATION OF
### DEBTOR'S PLAN OF REORGANIZATION
### ON REMAND

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge.

### I. INTRODUCTION

Before the Court at this time, on remand from the United States District Court, is the confirmation of the Debtor's proposed plan of reorganization. Because that plan is not feasible, the Court will deny confirmation of the same.

### II. BACKGROUND

On November 21, 2005, following a hearing held on competing plans of reorganization and liquidation (hereafter, the "Competing Plans"), namely (i) the Debtor's *First Amended Plan of Reorganization* (Doc. I.D. No. 98) as modified (hereafter, the "Debtor's Plan"); and (ii) a *Creditor's Second Amended Plan of Liquidation* (Doc. I.D. No. 101) (hereafter, the "Mercury Plan") filed by Mercury Capital Corporation (hereafter, "Mercury"), the Court issued an *Order on Confirmation of Competing Plans* (Doc. I.D. No. 129) (hereafter, the "Confirmation Order"), confirming the Debtor's Plan, not confirming the Mercury Plan, and determining therein, *inter alia*, that –

> . . . both of the Competing Plans are "confirmable", in that they each meet the standards for confirmation set forth in Bankruptcy Code Sections 1129(a) and (b). Nonetheless, under the terms of Section 1129(c), the Court may only confirm one plan, and in doing so, must "consider the preferences of creditors and equity security holders". In the present case the Court finds and concludes that all equity security holders and all voting creditors, with the exception of Mercury, prefer the Debtor's Plan over the Mercury Plan.

(footnote omitted). Mercury subsequently appealed the Confirmation Order to the United States District Court for the District of Connecticut. <u>Mercury Capital Corporation v. Milford Connecticut Associates, L.P.</u>, Case No. 3:05cv1974 (SRU) (hereafter, the "Appeal").

The key component of the Debtor's Plan was the provision of a 30-month period within which it was to enjoy an exclusive right to sell a parcel of commercial real property located at 265 Old Gate Lane, Milford, Connecticut (hereafter, the "Real Property") that is the principal asset of this "single-asset" estate. Notwithstanding Mercury's prosecution of the Appeal, on December 21, 2004, this Court entered a stipulated Order (Doc. I.D. No. 145) providing, *inter alia*, the Debtor with the exclusive right to market and sell the Real Property *even though the Appeal was pending.*[1]

By *Memorandum of Decision* dated October 12, 2006 (hereafter, the "Appellate Ruling"), United States District Judge, Stefan R. Underhill, vacated the Confirmation Order

---

[1] Specifically, the Court ordered that –

> . . . the Court's Order on Confirmation of Competing Plans dated November 21, 2005 is hereby stayed pending the final adjudication of Mercury's appeal from the Confirmation Order, **PROVIDED**, however, that the Debtor is fully authorized as a debtor-in-possession to market, negotiate, sell, lease and/or option the . . . Real Property . . . during the pendency of Mercury's appeal, fully binding the Debtor subject only to Court approval pursuant to the requirements of 11 U.S.C. §363 and all other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and Mercury's rights to object. Further, Mercury shall not solicit offers for the Real Property nor negotiate with potential buyers for the Real Property, and if Mercury receives any offers or communications from potential buyers, Mercury will direct them to the Debtor during the pendency of the appeal.

and remanded the case to this Court for further proceedings consistent with the Appellate Ruling. Mercury Capital Corp. v. Milford Connecticut Associates, 354 B.R. 1, 14 (D.Conn. 2006). A hearing on remand in accordance with the Appellate Ruling was held before this Court on February 6, 2007, and post-hearing briefs were subsequently received and considered. Subsequently, on the motion of Mercury, this Court ordered the parties to appear for a status conference on the matters *sub judice*, and that conference was ultimately held on March 4, 2008 (hereafter, the "Status Conference").

At the Status Conference, the Debtor urged the Court to re-confirm the Debtor's Plan with requisite findings in accordance with the Appellate Ruling, and attended by a fully prospective 30-month marketing window -- providing until at least September 5, 2010, to sell the Real Property. Mercury's successor-in-interest, Paradigm Capital Group (hereafter, "Paradigm") appeared at the Status Conference and (i) declined to prosecute the Mercury Plan, and (ii) requested that if the Court were to re-confirm the Debtor's Plan that such confirmation be *nunc pro tunc* to November 21, 2005, that is, to provide no longer than May 31, 2008 for the Debtor to sell the Real Property.[2]

---

[2] Alternatively, and in the event this Court were to deny confirmation of the Debtor's Plan, Paradigm urged the Court either to (i) convert the case to Chapter 7 upon the pending *United States Trustee's Motion for an Order Converting the Debtor's Case to One Under Chapter 7* (Doc. I.D. No. 69) (hereafter, the "Motion to Convert") or (ii) "simply" grant them stay relief. Status Conference Tr. at 12:17:20.

Given that the Court previously denied a written motion for relief from stay prosecuted by Mercury (Doc. I.D. No. 21), it will consider Paradigm's oral request for stay relief only upon written motion and after due notice and hearing. This Court will consider conversion of this case to one under Chapter 7, and the possible appointment of a Chapter 11 trustee, at a hearing to be held on March 26, 2008 at 2:00 P.M., as more fully announced in a separate *Order Scheduling Hearing on Pending Motions* entered this day.

3

### III. DISCUSSION

In view of the District Court's vacation of the Confirmation Order, and instruction to reconsider confirmation of the Plan, this Court has undertaken a fresh analysis of the Debtor's Plan under all of the confirmation standards of Section 1129(a). In sum, this Court determines on remand, and in light of the track record of the Debtor, that the Debtor's Plan is not feasible under the standards of Section 1129(a)(11).

As stated *supra*, the centerpiece of the Debtor's Plan was an exclusive 30-month marketing window for the Real Property. Given the history of the Debtor, and its relationship with its creditors, the Court's confirmation of the Debtor's Plan was, *inter alia*, an endorsement of the concept that the Debtor would enjoy a generous, *but time-limited*, opportunity to market the Property. In short, the basis on which the Debtor's Plan was confirmed was that it was the final opportunity for the Debtor to engage in *bona fide* and exclusive marketing of the Real Property.

As of the date of the Status Conference, the Debtor had enjoyed the benefit of 27 of the 30 months of exclusive marketing provided for in its Plan, in effect permitting the Debtor to realize the intended benefits of its Plan despite the pendency of the Appeal. Nevertheless, it appears that the Debtor has engaged in no meaningful effort to market or sell the Real Property, and has utterly failed to advantage itself of the generous sale opportunity provided during the last 27 months.

At the Status Conference the Debtor conceded that it would be unable to consummate its plan within the remaining period of the marketing window stated in the Debtor's Plan. The current inability of the Debtor to complete a timely sale of the Property

within the original time-frame of the Debtor's Plan is a failure which the Court views to be singularly of the Debtor's own making. It was uncontested that (i) there is no marketing signage upon the Real Property; (ii) the Real Property is not listed with a Multiple Listing Service; and (iii) the Debtor has not applied to this Court for authority to employ a real estate broker. Accordingly, it is presently crystal clear that the Debtor, as a plan proponent, has not and can not establish that its Plan "offers a reasonable assurance of success", Kane v. Johns-Manville Corporation, 843 F.2d 843 F.2d 636, 649 (2d Cir. 1988), and, thereby, satisfy the feasibility requisite of Section 1129(a)(11).[3]

### IV. CONCLUSION

For the foregoing reasons, confirmation of the Debtor's Plan, on remand, shall be **DENIED** by separate order.

BY THE COURT

Dated: March 10, 2008

Albert S. Dabrowski
Chief United States Bankruptcy Judge

---

[3] This Court's conclusions as to feasibility are confirmed by the broader history of the Debtor's conduct. The Court is mindful that the Real Property has been the subject of attempted "reorganization" for nearly a full decade. Prior to the present case, the Debtor initiated a separate Chapter 11 case on March 29, 1999 (hereafter, the "1999 Case"). On December 22, 1999, this Court entered an Order confirming a plan of reorganization in the 1999 Case (hereafter, the "1999 Plan"). The Debtor failed to consummate the 1999 Plan, and the 1999 Case was not closed until July 1, 2003. Although it had represented to the Court that it would not "need . . . further financial reorganization" beyond its 1999 Plan, the Debtor filed the instant Chapter 11 case within seven months of the closure of the 1999 Case. In addition, the record reveals that the Debtor has prosecuted the present case – a "single-asset" case – in a dilatory fashion. Among other things, it filed its required Schedules and Statements over four months late; it did not file a proposed plan of reorganization for over 19 months; and it has been chronically and severely late in filing required Monthly Operating Reports.