**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------
In re:                                          )          Chapter 11
                                                )
MILFORD CONNECTICUT                             )
    ASSOCIATES, L.P.,                         )          Case No. 04-30511 (ASD)
                                                )
    Debtor.                                   )          Re: Doc. I.D. No. 242
------------------------------------------------------

**MEMORANDUM OF DECISION ON MOTION TO**
**CONVERT CASE TO CHAPTER 7**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge.

**I. INTRODUCTION**

Before the Court at this time is the above-captioned *United States Trustee's Amended Motion . . . for Orders Either Converting the Debtor's Chapter 11 Case to one under Chapter 7 or Directing the Appointment of a Chapter 11 Trustee* (hereafter the "Amended Conversion/Trustee Motion").[1] Upon the extensive record of this contested matter and bankruptcy case, the Court determines, *inter alia*, that there exists "cause" within the meaning of Bankruptcy Code Section 1112(b) justifying the conversion of this case to one under Chapter 7.

**II. JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over the instant contested matter by virtue of 28 U.S.C. § 1334(b). This Court derives its authority to hear and determine this matter on reference from the District Court

---

[1] This motion is a consolidated amendment of the following motions: (i) *United States Trustee's Motion for an Order Converting the Debtor's Case to One Under Chapter 7* (Doc. I.D. No. 69) (hereafter, the "Conversion Motion") and (ii) *United States Trustee's Motion for an Order Directing the United States Trustee to Appoint a Chapter 11 Trustee* (Doc. I.D. No. 72) (hereafter, the "Trustee Motion").

pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A).

### III. FACTUAL & PROCEDURAL BACKGROUND

On February 2, 2004, the Debtor, a New Jersey limited partnership, commenced the current Chapter 11 bankruptcy case through the filing of a voluntary petition in this Court. The principal asset of this "single-asset" bankruptcy estate is a parcel of commercial real property located at 265 Old Gate Lane, Milford, Connecticut (hereafter, the "Real Property"). At the time of the commencement of this bankruptcy case, a foreclosure of the Debtor's interest in the Real Property was imminent in an action prosecuted in the Connecticut Superior Court by Mercury Capital Corporation (hereafter, "Mercury") – a mortgagee on the Real Property.

Eventually both the Debtor and Mercury proposed plans of reorganization in this case (hereafter, the "Competing Plans"). On November 21, 2005, following a hearing held on the Competing Plans, the Court issued an *Order on Confirmation of Competing Plans* (Doc. I.D. No. 129) (hereafter, the "Confirmation Order"), confirming the Debtor's plan (hereafter, the Debtor's Plan"), not confirming Mercury's plan (hereafter, the "Mercury Plan"), and determining, *inter alia*, that –

> . . . both of the Competing Plans are "confirmable", in that they each meet the standards for confirmation set forth in Bankruptcy Code Sections 1129(a) and (b). Nonetheless, under the terms of Section 1129(c), the Court may only confirm one plan, and in doing so, must "consider the preferences of creditors and equity security holders". In the present case the Court finds and concludes that all equity security holders and all voting creditors, with the exception of Mercury, prefer the Debtor's Plan over the Mercury Plan.

Mercury subsequently appealed the Confirmation Order to the United States District Court for the District of Connecticut.  Mercury Capital Corporation v. Milford Connecticut Associates, L.P., Case No. 3:05cv1974 (SRU) (hereafter, the "Appeal").

A key component of the Debtor's Plan was the provision of a 30-month period within which it was to enjoy an exclusive right to market the Real Property.  Notwithstanding Mercury's prosecution of the Appeal, on December 21, 2005, this Court entered a *Stipulated Order. . .* (Doc. I.D. No. 148) providing, *inter alia*, the Debtor with the exclusive right to market and sell the Real Property despite the pendency of the Appeal.[2]

By *Memorandum of Decision* dated October 12, 2006 (hereafter, the "Appellate Ruling"), United States District Judge, Stefan R. Underhill, vacated the Confirmation Order and remanded the case to this Court for further proceedings consistent with the Appellate Ruling.  Mercury Capital Corp. v. Milford Connecticut Associates, 354 B.R. 1, 14 (D.Conn. 2006).  A hearing on remand in accordance with the Appellate Ruling was held before this Court on February 6, 2007.  The Court also received and reviewed the

---

[2] Specifically, the Court ordered that –

. . . the Court's Order on Confirmation of Competing Plans dated November 21, 2005 is hereby stayed pending the final adjudication of Mercury's appeal from the Confirmation Order, *provided*, however, that the Debtor is fully authorized as a debtor-in-possession to market, negotiate, sell, lease and/or option the . . . Real Property . . . during the pendency of Mercury's appeal, fully binding the Debtor subject only to Court approval pursuant to the requirements of 11 U.S.C. §363 and all other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and Mercury's rights to object. Further, Mercury shall not solicit offers for the Real Property nor negotiate with potential buyers for the Real Property, and if Mercury receives any offers or communications from potential buyers, Mercury will direct them to the Debtor during the pendency of the appeal.

post-hearing briefs of the parties, and subsequently convened a status conference pursuant to Code Section 105(d)(1).[3]

On March 10, 2008, this Court entered its *Memorandum of Decision on Confirmation of Debtor's Plan of Reorganization on Remand* (Doc. I.D. No. 200) (hereafter, the "Confirmation Denial Memorandum") and *Order on Confirmation of Debtor's Plan of Reorganization on Remand* (Doc. I.D. No. 201) (hereafter, the "Confirmation Denial Order"). In the Confirmation Denial Memorandum this Court explained its denial of confirmation of the Debtor's Plan as follows:

> [T]his Court has undertaken a fresh analysis of the Debtor's Plan under all of the confirmation standards of Section 1129(a). In sum, this Court determines on remand, and in light of the track record of the Debtor, that the Debtor's Plan is not feasible under the standards of Section 1129(a)(11).
>
> [T]he centerpiece of the Debtor's Plan was an exclusive 30-month marketing window for the Real Property. Given the history of the Debtor, and its relationship with its creditors, the Court's confirmation of the Debtor's Plan was, *inter alia*, an endorsement of the concept that the Debtor would enjoy a generous, *but time-limited*, opportunity to market the Property. In short, the basis on which the Debtor's Plan was confirmed was that it was the final opportunity for the Debtor to engage in *bona fide* and exclusive marketing of the Real Property.

---

[3] The referenced status conference (hereafter, the "Status Conference") was ultimately held on March 4, 2008. At the Status Conference, the Debtor urged the Court to re-confirm the Debtor's Plan with requisite findings in accordance with the Appellate Ruling, and attended by a *fully prospective* 30-month marketing window -- providing until at least September 5, 2010, to sell the Real Property. Mercury's successor-in-interest, Paradigm Capital Group (hereafter, "Paradigm") appeared at the Status Conference and (i) declined to prosecute the Mercury Plan, and (ii) requested that if the Court were to re-confirm the Debtor's Plan that such confirmation be *nunc pro tunc* to November 21, 2005, that is, to provide a date no later than May 31, 2008 for the Debtor to sell the Real Property. Alternatively, and in the event this Court were to deny confirmation of the Debtor's Plan, Paradigm urged the Court either to (i) convert the case to Chapter 7 or (ii) "simply" grant it relief from the automatic stay.

> As of the date of the Status Conference, the Debtor had enjoyed the benefit of 27 of the 30 months of exclusive marketing provided for in its Plan, in effect permitting the Debtor to realize the intended benefits of its Plan despite the pendency of the Appeal.  Nevertheless, it appears that the Debtor has engaged in no meaningful effort to market or sell the Real Property, and has utterly failed to advantage itself of the generous sale opportunity provided during the last 27 months.
>
> At the Status Conference the Debtor conceded that it would be unable to consummate its plan within the remaining period of the marketing window stated in the Debtor's Plan.  The current inability of the Debtor to complete a timely sale of the Property within the original time-frame of the Debtor's Plan is a failure which the Court views to be singularly of the Debtor's own making. . . . Accordingly, it is presently crystal clear that the Debtor, as a plan proponent, has not and can not establish that its Plan "offers a reasonable assurance of success", <u>Kane v. Johns-Manville Corporation</u>, 843 F.2d . . . 636, 649 (2d Cir. 1988), and, thereby, satisfy the feasibility requisite of Section 1129(a)(11).

Coincident with the foregoing ruling, the Court scheduled hearings on the United States Trustee's Conversion and Trustee Motions (hereafter, the "Conversion/Trustee Hearings").  <u>See</u> Doc. I.D. No. 202.  The Conversion/Trustee Hearings were subsequently continued *by agreement* to May 22, 2008, with provisions for, *inter alia*, the interim payment of local real estate taxes and mortgage interest (Doc. I.D. No. 240) (hereafter, the "Continuance Order").[4]  The Continuance Order also granted leave to the United States Trustee to amend its Conversion and Trustee Motions, which it has done in the form of the Amended Conversion/Trustee Motion *sub judice*.

The Debtor promptly made a motion to the United States District Court for leave to appeal the interlocutory Confirmation Denial Order (Doc. I.D. No. 209) (hereafter, the

---

[4] The Continuance Order specifically stipulated that "[t]he Debtor shall pay the City of Milford the taxes due January 31, 2008 plus $10,000 such that the payment is received on or before April 11, 2008. The Debtor shall pay or cause to be paid to Paradigm . . . the sum of $34,026.19 such that the payment is received on or before April 18, 2008 and on the 18th of each ensuing month . . . so long as the Debtor remains a Debtor in Possession."

"Motion for Leave to Appeal"). At the same time the Debtor moved this Court for a stay of "proceedings" – including the instant matter – pending a determination of its appellate process (Doc. I.D. No. 210) (hereafter, the "Appellate Stay Motion"). On May 7, 2008, this Court denied the Appellate Stay Motion without prejudice (Doc. I.D. No. 244); and on May 16, 2008, the District Court denied the Motion for Leave to Appeal (Doc. I.D. No. 246).

## IV. THE RECORD OF THE PRESENT MATTER

The record of the instant matter includes the entire record of this bankruptcy case, including previous findings of this Court and all matters subject to judicial notice. It also includes material received at the May 22, 2008 hearing of the present matter, including the uncontested representations of counsel, and the credible documentary and testimonial evidence received by the Court that day. That record permits the Court to make the following findings.

The Debtor filed its required Schedules and Statements over four months late. It did not file a proposed plan of reorganization for over 19 months. It has been late to pay required Quarterly Fees to the Office of the United States Trustee. It has been chronically and severely late in filing required Monthly Operating Reports.[5] The form of the Monthly Operating Reports filed by the Debtor often has not been in conformance with the guidelines of the Office of the United States Trustee.[6]

---

[5] Monthly Operating Reports were filed up to 17 months late.

[6] These deviations included: (i) multiple reporting periods aggregated onto a single report; (ii) the reports not being sworn; and (iii) the reports being signed by the attorney for the Debtor, not a principal of the Debtor.

-6-

The competing appraisal testimony presented by the Debtor and Paradigm supports a finding that the present value of the Real Property provides a sufficient "equity cushion" to satisfy the secured claim of Mercury/Paradigm. Aside from the payments provided for in the Continuance Order, the Debtor has made no payments to Mercury or Paradigm during the pendency of this case, nor has it made any payments toward accrued and accruing real property taxes owed to the Town of Milford – taxes that have priority over the Mercury mortgage.

Mr. Lawrence Berger, the principal of the Debtor's general partner, testified at length concerning the Debtor's efforts to market the Real Property. Mr. Berger provided generally credible testimony to the effect that in the marketplace outside of bankruptcy the Debtor's protracted and insular approach to the marketing or development of the Real Property was a prudent and commercially reasonable course of conduct.

## V.  DISCUSSION

**A.  Governing Law.**

The relief requested and preferred by the United States Trustee in this matter is a conversion of the pending Chapter 11 case to one under Chapter 7. The resolution of this request is governed by Bankruptcy Code Section 1112, as it existed in 2004, which provided in relevant part as follows:

> . . . on request of a party in interest . . . and after notice and a hearing, the court *may convert* a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause*, including --
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;

-7-

>   (3) unreasonable delay by the debtor that is prejudicial to creditors;
>   . . . . or
>
>   * * * *
>
>   (10) nonpayment of any fees or charges required under chapter 123 of title 28.[7]

11 U.S.C. § 1112(b) (2004) (emphasis supplied). Accordingly, a Court may convert a Chapter 11 case to one under Chapter 7 upon a determination of "cause". And it is clear from the statutory framework, and its use of the term "including", that "cause" is a highly flexible standard, not limited to the specific examples of the same enumerated in Section 1112(b).

**B. The Existence of "Cause".**

Upon the entire record of this contested matter and bankruptcy case, the Court finds and concludes that there exists more than ample "cause" to place the administration of the Debtor's estate in the hands of an independent fiduciary charged with the liquidating that estate with due expedition, *i.e.* a Chapter 7 trustee.

There can be no doubt that the Debtor has seriously neglected its reporting and other administrative responsibilities as a Chapter 11 debtor-in-possession. Given the importance of periodic reporting in the Chapter 11 administrative scheme, it is not surprising that courts have found such deficiencies to constitute "cause" justifying the conversion of a case to Chapter 7. E.g., In re Tornheim, 181 B.R. 161, 164 (Bank. E.D.N.Y. 1995); see also In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) ("Of prime importance in the reorganization process is the principle of disclosure .

---

[7] Chapter 123 of Title 28 includes, *inter alia*, Section 1930 – requiring, *inter alia*, that a Chapter 11 Debtor pay a quarterly fee to the United States Trustee not later than the last day of the month following the end of each quarter. 28 U.S.C. § 1930(a)(6).

. . . [D]isclosure is required during the entire reorganization process . . . ."). The Debtor's delinquency with respect to, *inter alia*, required monthly operating reports is shocking to the Court; especially given the fact that the Debtor has retained counsel in this case whom the Court recognizes as sophisticated and highly experienced in the administration of Chapter 11 estates. The level of disregard indicated by these administrative deficiencies is only magnified by the presence of such attorneys – who knew the legal requirements and potential sanctions, and presumably urged the same upon the Debtor's principal(s).

As noted above, the extensive administrative deficiencies, standing alone, could well support the granting of some form of the requested relief. However, these deficiencies do not stand in isolation. They are indicative and corroborative of the Debtor-in-possession's utter and complete disregard of its responsibilities as a bankruptcy fiduciary.

The record supports a determination that the Debtor's general partner, as directed by Mr. Berger, has had the intention of "parking" the Debtor in bankruptcy until such time as it deems market conditions to be optimal to sell or otherwise develop the Real Property.[8] That dilatory agenda is not a luxury the Bankruptcy Code affords.

---

[8] The present case is not the first time the Real Property has been the subject of a bankruptcy "reorganization". A prior Chapter 11 case (Case No. 99-31119) (hereafter, the "1999 Case") was commenced by the Debtor on March 29, 1999. On December 22, 1999, this Court entered an Order confirming the Debtor's plan of reorganization in the 1999 Case (hereafter, the "1999 Plan"), and the 1999 Case was closed in July of 2003. Although it had represented to the Court that it would not "need . . . further financial reorganization" beyond its 1999 Plan, the Debtor filed the present Chapter 11 case within seven months of the closure of the 1999 Case. Thus, in truth, the Real Property has been languishing in bankruptcy for nearly a full decade without a good faith effort toward "reorganization".

The United States Supreme Court "has long recognized that a chief purpose of the bankruptcy laws is 'to secure a *prompt* and effectual administration and settlement of the estate . . . *within a limited period*.'" Katchen v. Landy, 382 U.S. 323, 328-29 (1965) (quoting Ex Parte Christy, 44 U.S. 292, 312 (1845)) (emphasis supplied); cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 376 (1988) (the automatic stay of Section 362(a) will only protect debtor property that "is essential for an effective reorganization *that is in prospect*"; meaning that "there must be a reasonable possibility of a successful reorganization within reasonable period of time." (internal quotations omitted)).

Mr. Berger's testimony outlined a necessarily protracted marketing plan that he suggested must be applied to the Real Property to achieve maximum value. In essence, the Debtor, through Mr. Berger, expects the marketing standards of the "real" (non-bankruptcy) world to apply in the context of bankruptcy. However, this position neglects the fact that in the "real world" the Debtor would long ago have had to account for and accept the non-bankruptcy consequences of the financial arrangements it made with its creditors – most notably, Mercury. Indeed, the very reason the Debtor entered into the "bankruptcy world" was to *avoid* the consequences of its "real world" obligations – most notably, an impending foreclosure of the Real Property by Mercury. In essence, the Debtor wants all the benefits of Chapter 11 without accepting the concomitant constraints.

Chapter 11 debtors cannot "have their cake and eat it too"; the extraordinary relief provided by the bankruptcy laws comes with a price. That "price" includes the responsibility to pursue an open and expeditious reorganization, even if the openness

-10-

and expedition of that effort means that holders of equity interests will not receive a level of distribution that might be achieved via a more closed and/or protracted approach.  Simply put, a debtor, as debtor-in-possession, must timely discharge the unique responsibilities of Chapter 11 in order to enjoy its limited benefits.

In the present case the Debtor-in-possession has utterly failed to meet the standards of disclosure and expeditious administration required by the letter and spirit of the bankruptcy laws.  Accordingly, sufficient "cause" exists under Section 1112(b) for this Court to convert this case to one under Chapter 7.[9]

### V.  CONCLUSION

For the foregoing reasons, the United States Trustee's request to convert this case to one under Chapter 7 will be **GRANTED** by separate order.

Dated: June 17, 2008                                                                                      BY THE COURT



Albert S. Dabrowski
**Chief United States Bankruptcy Judge**

---

[9] The Court determines that the creditors and the estate are best served by the expeditious administration provided by a Chapter 7 trustee, and hence declines the option of case dismissal provided under Section 1112(b).  Further, in light of the Court's determination that the United States Trustee's – and Paradigm's – preferred relief of *conversion* is justified and appropriate, it is not necessary for the Court to consider the question of the appropriateness of the appointment of a Chapter 11 trustee under Section 1104(a).